May it please the court. My name is Michelle Villaseñor Grant. I'm from the Federal Defenders of San Diego, appearing on behalf of the defendant appellant Eduardo Iruretagoyena. Close. Your honors, in this case, the government agrees that Mr. Iruretagoyena was unlawfully detained at the border without any reasonable suspicion. Does that bind us? I don't know if it does or not, your honor. However, I think since they conceded it, that that's an issue that the government has waived its argument on. And the question for this court, I believe, is whether the taint was purged between the point of the unlawful intrusion on Mr. Iruretagoyena's rights and the confession that he later made and the search of his vehicle, which found the marijuana in the car. If we look at Brown v. Illinois, we know that there are four factors that the court must look at. The first is whether Miranda rights were given. The second is the temporal proximity between the intrusion into Mr. Iruretagoyena's rights and the confession. The third is whether there were any intervening circumstances to lessen the coercive nature of the unlawful arrest. And the fourth is the purpose and flagrancy of the officer's conduct in this case. In this case, there were Miranda rights given. However, that's just one of the factors to look at. What is the evidence that we're concerned with? The statements is the first set of evidence that is of concern, that there was a confession given after the Miranda rights were read to Mr. Iruretagoyena. And then my second... Was that after the search? Yes. And my second argument is as to the search and discovery of the marijuana and requesting the marijuana be confessed. But the confession was after Miranda had been given. Yes, it was. Is there any issue about the voluntariness of a waiver of Miranda rights? No, there is not. Okay, so we can add to the equation, properly Mirandized and waived. Yes. So we're really talking about the search, aren't we? Well, I don't think so, Your Honor. I think that we are really looking at the intervening circumstances part of the four-factor test for Brown v. Illinois. The government contends that the Manuel and Nava cases have held that if there is subsequent probable cause found even after an unlawful intrusion, then any confession thereafter is all right. But the whole point of Brown v. Illinois, that line of Supreme Court cases, is that it's not a bright-line test and it's not a bright-line rule. But was the border stopped? Yes, it was. Brown v. Illinois was. No, it was not. None of those other cases are border situations. Correct. However, I think the question is still whether the unlawful intrusion in the case did taint the subsequent confession. So you still need to look at those four factors. Factor one, Miranda's okay. What's factor two all about? Factor two is the timing. Here, there was approximately two and a half hours between the stop, the initial detention, and the Miranda and subsequent waiver and confession. And Brown and Dunaway were both just under two hours. They found that that wasn't sufficient time. Taylor was actually six hours, and they found that that was not sufficient time to purge the taint from the arrest to the statements. The third factor is the intervening. So how do we deal with that? Are you saying a fortiori two hours is not enough and weighs in your favor? No, I don't think so. But I think that given that Taylor was at six hours, and my case is in between two hours and six hours, then that goes more in my favor than it does towards the government. But it's not dispositive. No, it's not. Again, you have to look at the totality of the circumstances. We have Miranda plus two hours. Go ahead. Thank you. And then there's the intervening circumstance. And this is where the government and I completely disagree. It appears that the government is arguing that since there was the marijuana was discovered, it was all right for them to then question Mr. Irutagoyen because that gave them probable cause to subsequently arrest him. However, if you look at the cases of Brown, Dunaway, and Taylor, and even from this court, Delgadillo-Velasquez, which was decided five years after Manuel, they purport that the intervening circumstance that you're looking for is something that lessens the coercive nature of the initial intrusion. And there is not anything to show that that happened in this case. Intrusion. And what are you talking about? The unlawful detention. The initial unlawful detention. Well, are we sure that it was an unlawful detention? Well, as I said earlier, the government concedes that. However, I believe that it is because Mr. Irutagoyen was taken from the pre-primary area, which is before you get to the booth at the border. So this is across the United States-Mexico border, but it's not yet to the primary inspection booth area. He was removed from the car, handcuffed, taken to the secondary office, left there, and then another inspector came in and handcuffed him. What sets this apart from Nava and Bravo is that he was never advised that this was temporary, this was brief, this was for safety reasons or that nature. Here's what is troubling me. The district court decided this case in the background of some cases of ours that are a little confusing, that seem to turn on what he is told, whether he's told that you're free to go or not. Correct. It's obvious that he's at the border and that they're searching the car. He knows exactly what's happening. You know, any reasonable person would know if they don't find anything, then that's it. But if they do, then there's trouble. And it was after, if I understand it, it was after this case was decided by the district court that the Supreme Court decided the case involving the gas tank, taking apart the gas tank. Correct. So what bearing does that case have on this? Doesn't that change the universe quite a bit? I believe that Flores-Montano was really concerned with the search itself and whether there needed to be reasonable suspicion to search a vehicle at the border. And they didn't touch on any type of detention issue or arrest issue at the border. But it's routine when you're taking something apart that you detain the person who's driving the car. Correct. But I think that the reason that it's a little bit different in this case is that he was removed from the vehicle for the purpose for them to search the vehicle and handcuffed immediately and not told what was going on. And I think that that's what makes it different. A reasonably innocent person, if they were taken from their vehicle and handcuffed, even at the border, would believe that they were under arrest or they were not able to be free to go. Well, they're not free to go at the border, though. That's inherent in the situation. That's what makes this case different from some of the cases that you're relying on. They're not free to go at the border. Period. Right. But I think that the handcuffing and the lack of any advisal to the defendant is just what makes this case different from the others. Every time we get into the handcuff game, the Supreme Court seems to reverse us. If you read Maina v. Mueller, that's the latest Supreme Court's reversal of us because we thought that handcuffing had some significance and the Supreme Court didn't. And so it doesn't seem to me, especially after reading this latest case, that handcuffing per se adds very much, especially at the border. I understand Your Honor's point, but I do think that it still is. They could have searched the car whether they handcuffed him or not. Period. They just locked him in a room, whatever they did. Right. They had to keep him there. He couldn't go. The car was there. He knew that they were searching the car. He couldn't go. He couldn't go into the border. He wasn't going to leave it and run back. They could have cut his spare tire open with a knife. Apparently so. I think that what makes this different is that they Was there enough to convict him just based on the search itself? Arguably. What do you mean arguably? Well, I don't know what a jury would decide, but There was a lot of stuff in the car. Yeah, there was a lot of marijuana in the car. The dashboard and the gas tank and the quarter panel. Where else? I think that's it. Possibly some in the bumpers, but I know the dashboard and gas tank for sure. Well, it was an easier case when it was before the district court, I guess. Correct. I will reserve the remainder of my time for rebuttal. Thank you. Good morning. Orlando Gutierrez on behalf of the United States. May it please the Court. Your Honor, this case is about the intervening and independent probable cause That was developed by the discovery of contraband, a search of the car That was set in motion before any of the alleged illegal activity took place. But isn't your colleague correct that the intervening event is really supposed to be something that attenuates? The effect of any prior illegal behavior? Since we did waive in our response the initial argument that it was an illegal detention or an invalid detention. And why did you do that? Yeah, why did you do that? I mean, your office is always up to something. You know, I mean, you come in, you say, we're not relying on the dog. What is the larger agenda in making this concession? Your Honor, I must take complete responsibility for that. It was since after the district court made its decision. This case was focused on the manual and novotype analysis. And that was my fault in focusing on that. Such a waiver was perhaps a bit rash and exhibits a misunderstanding of how the Bravo case related to the Molina-Terrazon. But Roger's not up to something again. I don't believe so. Okay. But the intervening probable cause, the most important analysis that the government would like the court to consider, would be the fact that no evidence was derived from the detention that has been waived or alleged to be illegal. No statements were taken. No evidence was derived. The decision to search the car was made before he was taken out of the car, before he was handcuffed, and before there was any failure to inform him of why he was being handcuffed. The only real difference between this case and Nava is the fact that he wasn't told anything at all. Although the agent did testify at the hearing as to why he did it, he did not inform the defendant of that. And why did he do it? He said it was for safety reasons. Have you read Maina v. Mueller, the latest Supreme Court handcuffing case dealing with the Ninth Circuit? I read Roger's published synopsis of that. I haven't read the actual case. But what I can say is, Your Honor, no evidence was derived from the detention. It was all from the search that was set in motion even beforehand. And it wasn't that the primary inspector was making up a contextual type search. We asked the district court not to rely on the dog for the purpose of validating the reasonableness of his referral to secondary. But we did ask the court to say that, to consider the fact that the dog did occur and shows that there was a valid, legitimate basis, not just a contextual basis, for sending the car to secondary. So since it was a valid border search that occurred at the border of a car that was going to be searched anyway, there was nothing that stemmed from the illegal arrest, and therefore there was no real evidence to suppress that stemmed or was a fruit of that illegal detention. Isn't your standard policy always to say we're not relying on the dog? At the time of Carranza, I believe the case was, Your Honor, there were some discovery issues, and that decision was requiring us to discover a wealth of information we did not believe would be in the interest of, hypothetically speaking, people who smuggle drugs to understand exactly how the dogs are trained so they could counteract the effectiveness of the dogs. So at that point in time, while we were still working with how to respond to that, we asked them not to rely on the dog. They didn't want to get the pedigree and the trainer and all that stuff in. I understand that it was common for opposing counsel to request, not just opposing counsel, but the defense attorneys to request everything, and we didn't want to request everything, just certifications. But I believe that's been resolved. I have a question. What was the dog's name? That I don't recall. It's pretty relevant, isn't it? For some reason, it always does wind up in the reports, and I think even some responses. But, Your Honor, of course, the state of the law is perhaps no different than the fact that it's at the border, but since that argument was waived by the government, I will not address it. However, there is an independent intervening situation here that it accounted for, independent probable cause that would support the ultimate statements being admissible, and also the discovery of the dope, excuse me, the marijuana. Counsel indicated that the government has waived any argument with regard to the suppression of the marijuana. Do we need those statements to convict him in this case? You don't essentially need them. The Ninth Circuit has said that it's enough to have the person in the car with a commercial quantity of contraband. The statements do, of course, help in a jury trial, and they would have been used at jury trial in this case because it was a full confession. But what I can tell you, the government on page 16, the fourth line of the first full paragraph, the government specifically stated that the dope found, the marijuana found in the vehicle, was pursuant to a lawful border search. So we did not believe we waived any argument with regard to the suppression of marijuana. That was part of the whole theory of intervening probable cause, and it was so stated on page 16. Unless the Court has any more specific questions on it. Thank you. Thank you, Your Honor. The dog's name was Ubo, U-B-O, apparently. Ubo? Ubo, yeah. It's on page 14. U-B-U and Y-B-I. I do understand Your Honor's concern about the recent Supreme Court rulings and about detention at the border and whether something amounts to an unlawful detention at the border. But there are many other cases that I know myself have had and I know have been in front of your court where a vehicle is searched and someone is not handcuffed, someone is not detained. In fact, they just stand in front of the car while the car is being searched. So there are many other ways to accomplish the searching of the vehicle, which is perfectly lawful at the border, without handcuffing and unlawfully detaining someone. The question is whether they're constitutionally mandated. Correct. Exactly. And, Your Honor, I do believe that that's what occurred in this case. There was an unlawful detention and that the statements were not sufficiently attenuated from that, and I believe that also the search of the vehicle was also connected to the unlawful detention as well. Thank you. Thank you. Thank you. The case to start is submitted. We'll hear the next case, United States v. Cruz.
judges: Schroeder, Pregerson, Trott